UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**SETH JARRELL,**

    **Plaintiff,**

v.                                    Civil Action No. 2:16-cv-01757

**WEST VIRGINIA UNIVERSITY**
**INSTITUTE OF TECHNOLOGY, and**
**WEST VIRGINIA UNIVERSITY**
**BOARD OF GOVERNORS,**

    **Defendants.**

## COMPLAINT

Comes now the Plaintiff, Seth Jarrell, and brings his complaint for money damages against the above-named Defendants.

## THE PARTIES

1. Plaintiff Seth Jarrell ("Seth") is a twenty-year old male and a resident of the State of Ohio.

2. Defendant West Virginia University Institute of Technology ("WVU Tech") is a public four-year college located at 405 Fayette Pike, Montgomery, West Virginia.  WVU Tech exists within the West Virginia University system.

3. Defendant West Virginia University Board of Governors is the governing body of West Virginia University ("WVU"), the state's largest land-grant university, and in part, is tasked with the control, supervision and management of the financial, business, and

education policies and affairs of WVU. Furthermore, according to the WVU Tech website, "WVU Tech is governed by the West Virginia University Board of Governors."

4. To the extent that the State of West Virginia, through WVU Tech or WVU, may be responsible for any monetary judgment or recovery in this matter, recovery is only sought up to the limits of liability coverage of any applicable insurance policy.

## JURISDICTION AND VENUE

5. This Court possesses subject matter jurisdiction in the present matter under the federal question doctrine found in Article III, Section 2 of the United States Constitution, and the diversity jurisdiction provisions of 28 U.S.C. § 1332.

6. Pursuant to 28 U.S.C. § 1391, venue is appropriate before this Court because the events giving rise to the Plaintiff's allegations occurred within the Southern District of West Virginia.

## THE FACTS

7. Seth is a young man with documented and significant learning disabilities, including severe dyslexia.

8. Upon receiving his high school degree in the Spring of 2014, Seth began contemplating at which institution he would pursue his higher education. Seth also planned to compete in collegiate baseball.

9. However, critical to Seth's decision was the ability of an institution to accommodate

his learning disabilities.

10.     Among those institutions Seth considered was Defendant WVU Tech.

11.     Seth and his mother, Susan Kelley-Jarrell ("Ms. Jarrell"), were invited by Jill Hess to attend an open house at WVU Tech in June of 2014.  At the time, Ms. Hess' title was Accessibility Specialist and Divisional Campus Coordinator; Office of Disability Services; WVU Division of Diversity, Equity and Inclusion.

12.     The Jarrells accepted Ms. Hess' invitation, and at the open house, they explained Seth's learning disabilities to Ms. Hess and other representatives of WVU Tech.  As it relates thereto, Ms. Hess requested specific documentation and forms regarding Seth's learning disabilities.  Upon returning home from the open house, the Jarrells submitted the requested documents to the Defendants.

13.     Ms. Hess then sent Seth official correspondence dated July 28, 2014.  The first line of this correspondence indicated that, "I am writing to discuss the various unique services that will be provided to you at West Virginia University's Institute of Technology. As a student with a learning-based difference, you are eligible for all services through the Office of Accessibility Services.  This service coordinates and provides all of your accommodation needs based on your documented disability-related limitations.  You are eligible to receive numerous accommodations[.]"

14. Ms. Hess further represented in her correspondence as follows: ***"These services should be strongly considered while reviewing the post-secondary institution selection process."*** (emphasis in original).

15. Based principally on these promises made to him by Ms. Hess, Seth made the decision to enroll at WVU Tech for the Fall Semester of 2014, and play on the WVU Tech baseball team.

16. Unfortunately, the promise and requirement that Seth's disabilities would be accommodated was not honored by the Defendants from the very beginning of his collegiate experience.

17. Upon moving into his assigned residence hall, Seth was informed that the dual-occupancy room to which he was assigned did not have adequate space for the computer software necessary to accommodate his disability. This is despite the fact that the "numerous accommodations" promised by Ms. Hess in her previous correspondence to Seth included "accessible housing (to accommodate your computer software)[.]" (parentheses in original).

18. As such, WVU Tech officials required that Seth reside in a private dormitory room rather than in the dual occupancy room to which he had been previously assigned. This resulted in additional and unexpected expense to Seth and his family.

19. Once Seth began to pursue his academic career in earnest at WVU Tech, the promises and requirements for accommodation of his disability continued to be consistently broken

and ignored by the Defendants.

20. As identified in the Defendants' own internal findings of fact, "Mr. Seth Jarrell came to the Office of Accessibility Services and requested his ADA accommodation letter for Fall [2014] and these letters were sent to each of Mr. Jarrell's professors. The accommodations included extra time for tests, quizzes and exams (100% of extra time), extended time for in-class writing assignments (100% extra time), a separate, reduced distraction testing environment, and periodic discussions with professors, and to not penalize for spelling and grammar if the meaning can be understood, and is not fundamentally being assessed." (parentheses in orginial).

21. Such accommodations were consistent with those previously promised by Ms. Hess in her recruitment letter to Seth of July 28, 2014: "You are eligible to receive numerous accommodations, including: extended time on tests, a separate, limited-distraction testing environment, note-taking assistance, one-on-one periodic discussions with your professors, [and] alternative formats [.]"

22. Among the courses Seth enrolled in the Fall of 2014 was English 101. This course was taught by Professor Robert Mitrick of WVU Tech. Despite having explicit knowledge of the accommodations Seth required for his documented learning disabilities, Professor Mitrick failed to provide said accommodations. As a result, Seth received a D grade in English 101.

23. Seth also enrolled in Introductory Physical Science 1 in the Fall of 2014. This course

was taught by Professor Michael Fox of WVU Tech. Despite having explicit knowledge of the accommodations Seth required for his documented learning disabilities, Professor Fox failed to provide said accommodations. As a result, Seth also received a D grade in Introductory Physical Science 1.

24. Seth's grade point average for the Fall 2014 semester was 1.57, and was computed with the inclusion of his D grades in English 101 and Introductory Physical Science 1.

25. Among the consequences of Seth's 1.57 GPA in the Fall 2014 Semester was his ineligibility to compete on the WVU Tech baseball team in the Spring 2015 Semester.

26. On behalf of her son, Ms. Jarrell sent an email to Ms. Hess on December 29, 2014, in which she explained, in part, the failure of Professors Mitrik and Fox to accommodate Seth's known and documented learning disabilities.

27. Ms. Hess responded to Ms. Jarrell by email on January 7, 2015, and informed her that "I am no longer in the capacity of Accessibility Specialist, but I am WVU's ADA Coordinator."

28. Ms. Hess further responded as follows: "It is very disconcerting to know that Seth's professors were unwilling to accommodate him [.]"

29. On or about January 20, 2015, on behalf of Seth, Ms. Jarrell filed an administrative complaint for disability discrimination with the WVU Division of Diversity, Equity and Inclusion.

30. Ms. Jarrell then received correspondence dated April 7, 2015, from Dr. William M. Mayfield, Provost of WVU Tech.

31. In this correspondence, Dr. Mayfield indicated specifically as follows: "**Based on the facts developed during the investigation, it is our determination that the complaint was substantiated**." (emphasis added).

32. Incredibly, soon after receiving notice that his discrimination claims had been substantiated by the Defendants, Seth received official correspondence from Dr. Nigel N. Clark, Interim Provost of WVU Tech, dated May 20, 2015, in which Dr. Clark informed Seth that he was "not maintaining satisfactory progress while on academic probation," and that he was "hereby notified that you have received a first-level suspension and are ineligible to enroll for further courses until you have been reinstated."

33. Notably, the academic probation imposed on Seth was based on his grade point average of the Fall 2014 Semester, which included the grades he received in the English and Physical Science courses in which discrimination was found by the Defendants to have occurred.

34. Further notable is that, upon information and belief, Seth's cumulative grade point average leading to his suspension also included computation of the grades he received from the English and Physical Science professors whom the Defendants determined had discriminated against Seth.

35. Seth's suspension prevented him from of pursuing his higher education and playing collegiate baseball at WVU Tech, or at any other college and/or institution of higher education because of his academic suspension.

36. However, the discriminatory conduct Seth endured from the Defendants was not limited to the incidents identified above. As just an example, discriminatory comments were made by administrators and/or officials of WVU Tech to and in the presence of Seth regarding his learning disabilities. These and other incidents represent additional discrimination towards Seth that created a hostile learning environment for him at WVU Tech.

37. Furthermore, in addition to the above, there were additional instances in which Seth was subjected to discrimination by the Defendants. For example, Seth was not provided with opportunities to succeed academically that were otherwise provided to WVU Tech students who did not suffer from recognized and documented learning disabilities.

38. This action follows, to seek relief from the obvious and acknowledged discrimination Seth suffered at the hands of the Defendants.

## COUNT I
## EXCLUSION FROM PARTICIPATION IN PUBLIC PROGRAM AND/OR ACTIVITY
### (In Violation of Title II of the Americans with Disabilities Act)

39. Plaintiff incorporates and repeats by reference the allegations contained within the

paragraphs above.

40. Under the Americans with Disabilities Act ("ADA"), Seth is a qualified individual with a disability, in that he has a disability for which he is qualified to receive the benefits of a public service, program, or activity.

41. As an institution of public higher education, the Defendants are subject to the provisions and prohibitions of the ADA.

42. Title II of the ADA provides a private cause of action for money damages in the context of higher education.

43. Title II of the ADA further provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132.

44. According to Congress, the enactment of the ADA was necessary to address pervasive discrimination "in such critical areas as . . . housing, public accommodations, *education*, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. § 12101(a)(3) (*emphasis added*).

45. Based on his disability, Seth was excluded from participation in, and/or denied the benefits of programs and services offered by the Defendants, in violation of the ADA.

46. As a result, Seth has suffered the damages detailed below and throughout this Complaint.

## COUNT II
## DISCRIMINATION
### (In Violation of Title II of the ADA)

47.     Plaintiff incorporates and repeats by reference the allegations contained within the paragraphs above.

48.     Under the ADA, Seth is a qualified individual with a disability, in that he has a recognized learning disability.

49.     As a public institution of higher education, the Defendants are subject to the provisions and prohibitions of the ADA.

50.     Title II of the ADA provides a private cause of action for money damages in the context of higher education.

51.     Title II of the ADA further provides that "no qualified individual with a disability shall, by reason of such disability . . . be subjected to discrimination." 42 U.S.C. § 12132.

52.     Based on the facts detailed above, Seth was discriminated against by the Defendants, in violation of the ADA.

53.     Such discrimination includes, but is not limited to, discriminatory actions on behalf of the Defendants that created a hostile learning environment for Seth, and additional actions of the Defendants that deprived Seth of the opportunities to succeed academically and athletically that were otherwise provided to WVU Tech students who do not suffer from recognized and documented learning disabilities.

54. As a result, Seth has suffered the damages detailed below and throughout this Complaint.

## COUNT III
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
### (In Violation of Title II of the ADA)

55. Plaintiff incorporates and repeats by reference the allegations contained within the paragraphs above.

56. Under the ADA, Seth is a qualified individual with a disability, in that he has a disability and is qualified to receive the benefits of a public service, program, or activity.

57. As an institution of public higher education, the Defendants are subject to the provisions and prohibitions of the ADA.

58. Title II of the ADA provides a private cause of action for money damages in the context of higher education.

59. In the context of public higher education, Title II imposes an affirmative obligation to make "reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services to enable disabled persons to receive services or participate in programs or activities." 42 U.S.C. § § 12131(2).

60. In the context of public higher education, Title II further requires that state colleges and universities make reasonable accommodations for disabled students to ensure that they

are able to participate in the educational program. *See* 42 U.S.C. § § 12131.

61. Based on the facts provided above, the Defendants failed to provide Seth with reasonable accommodations in his pursuit of higher education at its public institution. In doing so, the Defendants violated the ADA, and as a result, Seth has suffered the damages detailed below and throughout this Complaint.

## COUNT IV
### VIOLATION OF TITLE II OF SECTION 504 OF THE FEDERAL REHABILITATION ACT

62. Plaintiff incorporates and repeats by reference the allegations contained within the paragraphs above.

63. Seth is a qualified individual with a disability under the Federal Rehabilitation Act ("FRA").

64. As the recipient of federal funds, the Defendants are subject to the provisions and prohibitions of the FRA.

64. Section 504 of the FRA provides a private cause of action for money damages in the context of higher education.

65. Section 504 of the FRA specifically provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29

U.S.C. § 794(a).

66. Programs and/or activities, including all the operations of a university or other postsecondary institutions such as the Defendants that receive federal funding must not discriminate on the basis of disability. *See Id*., § 794(b)(2)(A)

67. Based on the conduct described above, the Defendants violated Section 504 of the FRA, and as a result, Seth has suffered the damages detailed below and throughout this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Seth Jarrell, prays for the following relief:

(a) That he be awarded compensatory damages in an amount to be determined by a jury for the severe emotional and mental distress, humiliation, anxiety, embarrassment, depression, aggravation, annoyance and inconvenience that he has suffered as a result of the Defendants' discriminatory and unlawful conduct;

(b) That he be awarded money damages in an amount to be determined by a jury for loss of academic and athletic opportunity, damage to academic reputation, loss of professional opportunity and development, and related damages that he has suffered as a result of the Defendants' discriminatory and unlawful conduct;

(c) That he be awarded all out of pocket losses suffered as a result of Defendants' discriminatory and unlawful conduct;

(d) That he be awarded prejudgment and post-judgment interest on any and all damages, as provided by applicable law;

(e) That he be awarded his costs of litigation, including but not limited to, reasonable attorneys' fees, in accordance with the fee and cost shifting provisions of the ADA and RFA; and

(f) That he be awarded such other and further relief as this Court deems appropriate, and all relief otherwise available at law.

**A JURY TRIAL IS DEMANDED**

**SETH JARRELL**
By Counsel

/s/ Sean W. Cook

Sean W. Cook (WVSB # 10432)
Meyer Ford & Glasser, PLLC
120 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-3500
Fax: (304) 345-3935